## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

John Earl Lock,

      Plaintiff,

v.

Warden C. Holinka, et al.,

      Defendants.

_____

Civil No. 07-cv-2008 (DSD/JJG)

**REPORT AND RECOMMENDATION**

Plaintiff John Earl Lock ("Lock") brings this action against employees of the Federal Correctional Institution in Waseca, Minnesota.   Lock, proceeding pro se, alleges that the Defendants failed to provide him proper medical care in violation of the Eighth Amendment to the United States Constitution, and were negligent under the Federal Tort Claims Act ("FTCA").

This matter is before the Court on Defendants' motion to dismiss or for summary judgment (Doc. No. 32).  It is also before the Court on various motions by Lock.  *See* Doc. Nos. 47 (Lock's motion to subpoena Dr. Dey), 62 (Lock's motion to show cause and for injunctive relief), Doc. No. 66 (Lock's motion request for assistance from the Court).  As further set forth below, the Court recommends that the Defendants' motion for summary judgment be granted, and that Lock's motions be denied.

## I.     BACKGROUND

### A.     General

Lock is confined at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca").  He is serving a 360-month sentence, with a projected release date of January 5, 2023. *Decl. of Dennis Bitz*, ¶ 2.  Lock has been confined at FCI-Waseca since January 19, 2005.  *Id.*

Prior to FCI-Waseca, Lock was confined at the Federal Medical Center ("FMC") in Devens, Massachusetts. *Decl. of Dr. James Dey*, ¶ 7.

Lock is 39 years old. He suffers from chronic back pain. He identifies a pre-confinement work injury in 1998 as the source of his back problems. *Lock's opposition to Defs. motion*, Att. 26 (Doc. No. 60); *Complaint*, ¶ 37. He described his back problems as consisting of two herniated disks, a ruptured disk, and a protruding disk, and associated severe pain in his back, leg, and foot. *E.g.*, *Complaint*, ¶¶ 13, 26, 48.

**B.    Diagnostic Tests**

On February 18, 2004, before Lock was transferred to FCI-Waseca, Lock had an x-ray of his back while at FMC-Devens. The report generated from this x-ray stated:

> Present examination reveals mild degenerative spurring of the lower thoracic spine with no significant interval change radiographically from the previous. Three views of the lumbar spine, when compared to the prior normal study of 4-29-98, again reveal radiographically unremarkable lumbar spine. Impression: Stable mild lower thoracic degenerative changes. Radiographically unremarkable lumbar spine. Examination was discussed with P.A. Janisko at the time of dictation. Consider neurology follow up for consult, given the chronicity of the clinical symptoms.

*Lock's opposition*, Att. 13 (Doc. No. 60).

On May 2, 2005, while at FCI-Waseca, Lock had more x-rays of his back. An independent contractor radiologist, Gregory Taylor, stated that these showed:

> Two views of the thoracic spine demonstrate no compression deformity. Pedicles are intact. There is minimal mid-to-lower thoracic hypertrophic spurring.

*Id.*, Att. 14.

On May 8, 2006, Lock had further x-rays of his back due to his continued complaints of chronic back pain. *Dey Decl.* at ¶ 23. These x-rays were read by another independent contractor radiologist, David Johnson. According to Dr. Dey, Johnson "noted that plaintiff's thoracic spine

did not reveal any evidence of a fracture or destruction.  He did not observe any paravertabral soft tissue mass in the spine and noted that the joint spaces were maintained." *Id.*

On September 6, 2007, at Dr. Dey's request, Lock had an MRI of his back at the Waseca Medical Center.  Dr. Arnholt reported the results of the MRI, stating, inter alia:

> No focal findings in the lumbar spine to explain patient's radiculopathy.  Trace early degenerative changes at L4-L5 without any disc bulges or herniation.  1 cm lesion of the L2 vertebral body is nonspecific on noncontrast MRI.  Followup with bone scan could be considered if clinical suspicion is high.

*Dey Decl.*, Att. 1 (9/6/07 Department of Radiology Diagnostic Imaging Report).

Dr. Dey states that he conferred with an orthopedic surgeon regarding the lesion.  *Id.* at ¶ 15.  The surgeon advised Dr. Dey that "there was no need to obtain a bone scan because the orthopedic surgeon believed that the lesion was unrelated to the plaintiff's symptoms." *Id.*

On April 23, 2008, Lock had an EMG in Mankato, Minnesota.  He states that a specialist told him that he has no significant nerve damage, that he has neuropathy, and that he should see a foot specialist.  *See* Doc. No. 66.

### C.      Visits To Prison Medical Staff

Lock frequently saw prison medical staff while at FCI-Waseca.  His Complaint alleges that he visited prison medical staff on at least a monthly, if not a weekly, basis.  Some of these visits are described below.

On February 16, 2005, Lock saw Dr. Gray, the prison Clinical Director, who issued him a no prolonged standing medical restriction.  *Lock's opposition*, Att. 2B.  On May 12, 2005, Lock again saw Dr. Gray, who renewed the standing restriction and ordered that Lock be provided an extra pillow, a low bunk restriction, and a 25 pound lifting restriction.  *Id.*, Att. 2A; *Complaint*, ¶ 18. All of these measures were indefinite.  *Id.*

In January 2006, approximately one year after Lock was transferred to FCI-Waseca, Dr. James Dey replaced Dr. Gray as the prison Clinical Director. *Dey Decl.* at ¶ 2. Dr. Dey regularly evaluated Lock at six-month intervals, and also saw him in between those intervals when the need arose. *Id.* at ¶ 5. On October 24, 2007, Dr. Dey added a no repetitive upper body activity limitation to Lock's medical restrictions. *Lock's opposition*, Att. 2.

Lock was also treated by numerous other prison medical staff. In April 2006, Lock visited Defendant Gene Carrasca, a prison physician's assistant. Carrasca examined Lock and offered cold packs for his pain. Carrasca also ordered a height restriction, a 15 pound lifting restriction, and a 31-day medical convalescence. *Complaint*, ¶ 19; *Decl. of Gene Carrasca*, ¶¶ 2, 4.

Lock was treated also by an emergency medical technicians ("EMT"), Defendant Mead. Mead assisted Lock on April 30 and November 17, 2006, including carrying him to a wheelchair when he was having back pain and administering an injection of Ketorolac to relieve back pain and muscle spasms. *Decl. of Chad Mead*, ¶¶ 3, 4.

Lock consulted with a physical therapist on March 19, 2007. The therapist recommended daily stretching exercises for Lock. *Dey Decl.*, ¶ 6.

Prison officials also referred Lock to a pain management class taught by a psychologist. *Id.*; *Complaint*, ¶ 22.

Various prison medical staff frequently issued Lock medical idle or convalescence status due to his back pain. *Mead Decl.* at ¶ 4 (medical idle status from November 17 to 21, 2006); *Decl. of Marianne Boettger*, ¶ 3 (medical convalescence status from March 16 to March 30, 2007); *Carrasca Decl.*, ¶ 2 (medical convalescence for 31 days in April 2006); *Complaint* at ¶¶

24, 30, 31, 32 (5 day medical idle in September 2006; 24 hour medical idle in October 2006;

medical idles from January 9 to January 16, 2007, and from January 18 to March 30, 2007).

### D.      Lock's Administrative Complaint

On October 12, 2006, Lock filed an Informal Resolution Attempt.  He stated, inter alia:

> I informed medical that I'll need an MRI, not x-rays, to see the problem I'm having.  Medical was informed years ago about this, they have still delayed any treatment, meanwhile I'm still suffering and in constant pain.  I have been told by several medical staff that "I don't know what else to do to help you," "have you purchased OTC meds from the commissary [sic]," IE:   Tylonal [sic] or Ibuprofen….   I reply no and they continue to not help me.  I am requesting medical care for my back injury.

*Lock's opposition*, Att. 16.

On October 23, 2006, Defendant Anderson, Health Services Administrator at FCI-Waseca responded:

> You were evaluated by your assigned provider on 9/25/06 and diagnosed with a low back sprain.  Your treatment plan included instructions to purchase pain/anti-inflammatory medication from the Commissary.  If you failed to do this, you are not cooperating with the treatment plan.

*Id.*

On October 24, 2006, Lock brought the same complaint to Warden Holinka.  *Id.*, Att. 18. Holinka denied Lock's request on November 8, 2006, stating, "Throughout your series of chronic care and sick call evaluations, supportive treatment has been adequately provided, including prescription strength pain medication, exercise instructions, and medical restrictions as required.  Neither the assessment findings nor the x-ray results warrant an MRI at this time." *Id.*, Att. 19.

Lock appealed Holinka's denial, stating, "Please refer to the previous request for administrative remedy."   He explained that he was on Darvocet and Flexeril before his

incarceration and stated his understanding that medical could provide these drugs to him.  He

also stated, "I cannot take Ibuprofen because of my ulcer (bleeding) and hepatitis C, but medical

said to purchase this from commissary and take it."  *Id.*, Att. 19A.

On January 11, 2007, the Regional Director, Michael K. Nalley affirmed Warden

Holinka's decision.  He stated:

> This is in response to your Regional Administrative Remedy Appeal dated
> November 16, 2006, alleging insufficient medical care for your painful back
> condition….  For relief, you request proper treatment and an MRI….  [W]e
> concur with the Warden's response.  Your back has received timely and
> appropriate assessments….  Given the demonstrated sound clinical judgment, we
> shall defer diagnostic (i.e. MRI) and treatment interventions to your assigned
> provider.

*Id.*, Att. 19B.

Lock again appealed.  *Id.*, Att. 19C.  On March 26, 2007, the Administrator of National

Inmate Appeals affirmed the prior BOP decisions.  *Id.*, Att. 19D.

## II.    LEGAL STANDARD

### A.    Conversion of Rule 12(b)(6) Motion

The Defendants seek dismissal of Lock's Eighth Amendment claim under Fed. R. Civ. P.

12(b)(6), or alternatively, under Fed. R. Civ. P. 56(b), (c).  They also seek dismissal of Lock's

FTCA claim under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.    The

Defendants filed numerous affidavits in support of their position.  *See* Doc. Nos. 34 – 44.  In

response, Lock filed detailed responses to each affidavit, as well as numerous supporting

exhibits.  *See* Doc. Nos. 52-60, 68-70.

When matters outside the pleading are presented to the Court on a Rule 12(b)(6) motion

to dismiss, and the Court does not exclude them, "the motion must be treated as one for summary

judgment under Rule 56."  Fed. R. Civ. P. 12(d).    The Court finds such conversion appropriate

here.   The Court has considered the additional matters presented by both parties.   The Court finds that Lock had adequate notice of and an opportunity to respond to the Defendants' alternative summary judgment motion.   The Defendants explicitly styled their motion as one to dismiss or for summary judgment.   Lock submitted a responsive brief styled "Plaintiff's response to Defendant's motion to dismiss and for summary judgment."   Lock also filed detailed responses to each of the Defendants' affidavits and numerous matters outside the pleadings supporting his position.   *See* Doc. Nos. 52–60, 68-70.   Under such circumstances, the Court concludes that Lock had notice of and a reasonable opportunity to respond to the Defendants' summary judgment motion.   *George v. City of St. Louis*, 26 F.3d 55, 57 (8th Cir. 1994); *Van Leeuwen v. U.S. Postal Service*, 628 F.2d 1093, 1095 (8th Cir. 1980).   The Court, therefore, considers the Defendants' motion regarding Lock's Eighth Amendment claim as one for summary judgment.

### B.        Summary Judgment Standard

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986).   The moving party bears the burden of showing that the material facts in the case are undisputed.   *See Celotex*, 477 U.S. at 322; *Mems v. City of St. Paul, Dep't of Fire & Safety Servs*., 224 F.3d 735, 738 (8th Cir. 2000).   The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). The Court views the evidence, and the inferences that may be reasonably drawn from it, in the

light most favorable to the nonmoving party. *See Graves v. Ark. Dep't of Fin. and Admin.*, 229 F.3d 721, 723 (8th Cir. 2000); *Calvit v. Minneapolis Pub. Schs.*, 122 F.3d 1112, 1116 (8th Cir. 1997).

### C.   Motion to Dismiss Standard

When considering a motion to dismiss, a court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994). "A motion to dismiss should be granted as a practical matter ... only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). However, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, --U.S.--, 127 S.Ct. 1955, 1974 (2007).

### D.   Pro Se Complaint

The Court holds the allegations of a pro se complaint to "less stringent standards than formal pleadings drafted by lawyers…." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even a pro se pleading must contain specific facts supporting its conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III.   ANALYSIS

Lock files his Complaint against the federal employee Defendants for violation of his Eighth Amendment right to medical care. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). He also alleges "the tort of negligence." *Complaint*, p. 1. The Defendants move for summary judgment on Lock's Eighth Amendment claim, arguing that he failed to exhaust some of his allegations and that no genuine issue of material fact exists

that they were deliberately indifferent to Lock's back problem.   They also move to dismiss Lock's FTCA claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Lock makes several motions of his own.   He seeks the Court's leave to subpoena Dr. Dey.   He also requests that the Court order the Defendants to provide him proper pain relief or transfer him to a Bureau of Prisons medical hospital.   Finally, he asks that the Court modify its prior ruling regarding the filing fees he must pay.   The Court addresses each motion below.

### A.      Defendants' Summary Judgment Motion - Eighth Amendment

### 1.      <u>Exhaustion of Administrative Remedies</u>

An inmate who files suit challenging the conditions of his confinement under federal law must first exhaust available prison administrative remedies.   42 U.S.C. § 1997e(a) (the Prison Litigation Reform Act "PLRA").   A prisoner's suit alleging inadequate medical care under the Eighth Amendment is subject to this administrative exhaustion requirement.   *Porter v. Nussle,* 534 U.S. 516, 532 (2002) ("PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995).   If a prisoner includes both exhausted and unexhausted claims in his suit, the Court proceeds with the exhausted claims, and dismisses the unexhausted claims without prejudice. *See Jones v. Bock*, 127 S.Ct. 910, 924-925  (2007) ("As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.").

The Defendants acknowledge that Lock exhausted the prison's administrative remedy procedure with respect to his MRI request.   Specifically, on October 12, 2006, Lock initiated an informal resolution attempt, which was denied.   Lock appealed that denial through numerous administrative levels, arriving finally at the Administrator of National Inmate Appeals, who

affirmed denial of an MRI.  Defendants, however, contend that Lock failed to administratively exhaust any of his other inadequate medical treatment claims.  Lock responds that total exhaustion is not required under *Jones v. Bock*, 127 S.Ct. 910, and that any further exhaustion of his claims would have been futile.

The Court's examination of Lock's administrative requests indicates that Lock generally requested "medical care for my back injury," and specifically asked for "an MRI, not x-rays, to see the problem I'm having."  *See Lock's opposition,* Atts. 16, 18 (Doc. No. 60).  He also questioned why he was receiving only over-the-counter pain medication for his back pain, and stated his understanding that prison medical staff could prescribe stronger medication.  *See id.*, Att. 19A.  Read fairly to Lock, it appears he requested both an MRI and stronger pain medication in his administrative filings.  The Court, therefore, finds that Lock has administratively exhausted those issues with respect to his Eighth Amendment claim, and addresses them on their merits below.

Lock recounts a number of other instances where he interacted with the Defendants regarding his back pain.  These include his request for a soft shoe permit, denial of the extension of his medical convalescence status, and, more recently, denial of a foot specialist's care (*see* Doc. No. 66).  The Court is unclear whether Lock intended to allege that such instances constitute the unconstitutional denial of medical care in and of themselves, or whether he cited these occurrences as context for his primary complaints regarding an MRI and pain medication. Regardless, to the extent Lock sought relief regarding inadequate medical care beyond the MRI and medication issues, the record does not reflect administrative exhaustion of those issues as the PLRA requires.  As discussed above, Lock specifically raised only the medication and MRI issues in his administrative requests.

Lock generally contends that further administrative exhaustion would be futile. *See Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973) (exhaustion futile where administrative body has predetermined the issue before it); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (exhaustion futile where Attorney General had already declared its position that prison rules were correctly applied to prisoner). While all of Lock's various requests relate to his back pain, they each involved distinct ways of addressing that pain. The Court does not find that Lock's requests are so substantially similar that the prison's administrative denial of one is tantamount to a denial of all, or that the prison has predetermined that Lock is not entitled to any of the relief he seeks. Nor does Lock's apparent belief that further administrative claims would be fruitless suffice. *E.g., Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000). The Court, therefore, addresses only Lock's exhausted Eighth Amendment medical care claims, and recommends dismissal of the remainder without prejudice for failure to exhaust under the PLRA.

## 2. Eighth Amendment Standard

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In *Estelle v. Gamble*, the Supreme Court held that the Amendment's "elementary principles" of "dignity, civilized standards, humanity, and decency" "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. 97, 102-103 (1976). It elucidated that the government fails that obligation by "deliberate indifference to the serious medical needs of prisoners." *Id*. at 104.

The Eighth Circuit Court of Appeals has interpreted the *Estelle* deliberate indifference standard to require the plaintiff to show: "1) that he suffered from objectively serious medical needs; and 2) that the prison officials knew of but deliberately disregarded those needs." *Jolly v.*

*Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citation omitted). Further, the plaintiff "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Id.*

### 3.    Lock's MRI

Lock alleges that the Defendants, including Drs. Dey and Gray, and Warden Holinka violated his Eighth Amendment right to proper medical care by failing to order an MRI to diagnose his back pain.[1] The Court disagrees.

First, Lock has now received the MRI he requested in this lawsuit. *See Dey Decl.*, Att. 1. To the extent Lock contends that the prison officials' delay in providing the MRI, versus their failure to provide the MRI in the first instance, implicates the Eighth Amendment, the record does not reflect a material fact issue that Lock was placed at substantial risk due to the timing of the MRI. *See Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). To proceed on such a claim, Lock "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment…." *Id.* (*citing Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (internal quotation omitted). Lock did not do so. To the contrary, when the MRI was conducted, the radiologist opined that his findings did not explain Lock's back pain.[2] Any delay in treatment claim, therefore, fails as a matter of law.

Second, there is no genuine issue of material fact that the Defendants were deliberately indifferent to Lock's back condition with respect to the provision of the MRI. The Supreme

---

[1] Lock does not clearly indicate which Defendants he claims were involved in his exhausted Eighth Amendment claims. The Court's discussion of these claims, however, extends to all Defendants to the extent Lock implicates them in his Complaint with respect to the issues addressed on the merits here.

[2] He stated, "There are some mild superior posterior T12 endplate changes, but I doubt these would be associated with any radiculopathy symptoms….. No evidence of intracanalicular lesions to suggest source of patient's radiculopathy." *Dey Decl.*, 9/6/07 MRI report.

Court addressed this scenario head-on in *Estelle*.  In that case, the prisoner also suffered back pain.  He alleged that the prison doctor should have done more to diagnose and treat it, including conducting x-rays.  429 U.S. at 107.  The Court squarely rejected the invitation to second-guess the prison doctor's medical judgment, stating:

> But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most, it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

*Id.*

Here, just as in *Estelle*, Lock contends that the Defendants should have done more to diagnose his back pain.  But, as in *Estelle*, the prison doctor's decision regarding the necessity and timing of the MRI was "a matter for medical judgment" that does not implicate the Eighth Amendment.

The facts here compel this result with even greater force than the facts underlying *Estelle*. In *Estelle*, the prisoner was never allowed an x-ray.  *Id.* at 107.  In contrast, Lock had x-rays twice while at FCI-Waseca, once in 2005, and again in 2006.  He also had x-rays while he was incarcerated at FMC-Devens.  Moreover, Lock eventually received an MRI.  Finally, more recently, Lock had an EMG, after which he states that the administering doctor told him he did not have nerve damage.  *See* Doc. No. 66.

Moreover, Lock's doctors explained that his x-rays did not show anything concerning warranting additional diagnostic testing.  Regardless, after Lock complained of increased pain, Dr. Dey ordered the MRI Lock sought.  That test, too, failed to show findings consistent with Lock's pain.  While, the MRI showed a small spinal lesion, the radiologist left follow up regarding that finding to Lock's physician.  Dr. Dey did, in fact, follow up with a specialist

regarding the lesion, who opined that further follow-up was unnecessary because it was unrelated to Lock's symptoms. *Dey Decl.* at ¶ 15.

Additionally, like the prisoner in *Estelle*, Lock was frequently seen by prison medical personnel regarding his back pain. Lock saw Dr. Dey five times between May 2006 and January 2007, and had a standing evaluation with him every six months. *Dey Decl.* at ¶ 5. In between, Lock frequently saw other prison medical staff, including nurses, physician's assistants, and emergency medical technicians.

Based on these frequent visits, prison medical staff implemented numerous measures to manage Lock's back pain. Dr. Gray placed lifting and no prolonged sitting restrictions on Lock's prison work.[3] *Id.* at ¶ 4. Lock was assessed by a physical therapist and provided with suggested exercises to relieve his pain. *Id.* at ¶ 5. He was instructed to obtain over-the-counter pain medication from the prison commissary, and given a prescription for enteric coated aspirin. *Lock's opp.*, Att. 18; *Complaint*, ¶ 29. He was given injections of pain medication and authorized to use a wheelchair at times when his condition was particularly painful. *Complaint*, ¶¶ 20, 22; *Mead Decl.*, ¶ 3. He was frequently placed on medical idle or medical convalescence status and not required to work. *E.g., Mead Decl.* at ¶ 4 (medical idle status from November 17 to 21, 2006); *Boettger Decl.*, ¶ 3 (medical convalescence status from March 16 to March 30, 2007); *Carrasca Decl.*, ¶ 2 (medical convalescence for 31 days in April 2006); *Complaint* at ¶¶ 24, 30, 31, 32 (5 day medical idle in September 2006; 24 hour medical idle in October 2006; medical idle from January 9 to January 16, 2007, and from January 18 to March 30, 2007). He received a low bunk restriction and an extra pillow for his back. *Dey Decl.* at ¶ 13. He was

---

[3] Lock, himself, later asked that these restrictions be lightened so that he could try to work in the UNICOR factory program at the prison. *Dey Decl.* at ¶ 3.

offered hot and cold packs. *Carrasca Decl.* at ¶ 2. Dr. Dey referred Lock to a psychologist so that he could attend a pain management class *Dey Decl.* at ¶ 10; *Complaint* at ¶ 22.

In sum, Lock received the MRI he requested. He has not sufficiently evidenced that any delay in receiving the MRI was detrimental to him. Lock also underwent numerous other diagnostic tests, including x-rays and an EMG. He was frequently treated by prison medical personnel for his back pain, who implemented various measures to help him manage his pain. In this context, Lock's desire for an earlier MRI implicates his doctor's medical judgment, which this Court cannot second-guess via the Eighth Amendment. *Estelle*, 429 U.S. at 107. *See also Still v. Crawford*, 155 Fed. Appx. 241, 242 (8th Cir. 2005) (unpubl.) (prison doctor not deliberately indifferent to prisoner's back pain where he frequently examined him, prescribed ibuprofen or Tylenol, issued medical lay-ins and lifting restriction, and assigned him the bottom bunk).

### 3.   **Pain Medication**

Lock also appears to contend that Drs. Dey and Gray, other prison medical staff, and Warden Holinka should have allowed him different, presumably stronger, medication for his back pain. Lock states that, before imprisonment, he took Darvocet and Flexeril for his back pain. At FCI-Waseca, Lock was given the option to purchase over-the-counter aspirin or ibuprofen at the prison commissary. He was also prescribed enteric-coated aspirin. *Complaint*, ¶ 29. At times, he also received injections of pain medication for his back pain. *E.g.*, *Mead Decl.*, ¶ 3 (EMT Mead administered an injection of Ketorolac to Lock on April 30, 2006); *Complaint*, ¶ 27 (EMT Mead administered an injection in November 2006); *Lock's response to Defendants' Letter*, Doc. No. 70 ("I was given a shot of Toradol 60 mg….").

Dr. Dey acknowledged that Lock has not been prescribed narcotics for his back pain. He explained that "the standard of care for chronic, nonspecific back pain involves non-surgical judicious care, including physical therapy and use of non-steroidal anti-inflammatory medication. Surgery and narcotics are to be avoided if possible…. The plaintiff has been provided with a variety of medications to help alleviate his pain; however, he has not been prescribed narcotics." *Dey Decl.* at ¶ 10.

Dr. Dey's decision not to prescribe Lock heavier pain medication does not constitute deliberate indifference to his back pain. In *Still*, the Eighth Circuit Court of Appeals considered a similar complaint by a prisoner afflicted with back pain. 155 Fed. Appx. at 242. There, the prison doctor also recommended ibuprofen or Tylenol, rather than heavier pain medication. *Id.* The court found that this course of treatment, combined with a lifting restriction, medical lay-ins, and a bottom bunk assignment, did not constitute deliberate indifference to the prisoner's back pain. *Id.*

Here, Lock was prescribed over-the-counter pain medication, and periodically issued injections of pain medication. He saw a physical therapist, who recommended exercises for pain relief. He was referred to a pain management class given by a psychologist. As in *Still*, the prison doctor's judgment regarding the appropriate level of pain relief for Lock's back pain does not constitute deliberate indifference under the Eighth Amendment. As discussed above, this is particularly so in light of the record as a whole, which shows that prison medical personnel treated Lock frequently and implemented numerous other measures to help relieve his pain.[4] *See Estelle*, 429 U.S. at 107; *Jolly,* 205 F.3d at 1097.

---

[4] Lock took issue with prison medical staff's suggestion that he take ibuprofen. He explained that he cannot take ibuprofen because he has an ulcer and hepatitis C. *See Bitz Decl.*, Regional Administrative Remedy Appeal. However, Lock elsewhere acknowledges that prison medical

In sum, Lock fails to raise a genuine issue of material fact that the Defendants were deliberately indifferent to his back condition.  Accordingly, the Court recommends that his Eighth Amendment claim be dismissed with prejudice.

### B.    Defendants' Motion to Dismiss - Negligence Claim

Lock also "alleges the tort of negligence."  *Complaint*, Preliminary Statement, p.1.  He does not specify whether he brings his tort claim under state or federal law, nor does he clearly allege the elements of such a claim.

To the extent Lock presses such a claim under Minnesota law, it is precluded by the FTCA.  The Defendants have filed the Declaration of Dennis Bitz, an attorney employed by the United States Department of Justice and the Federal Bureau of Prisons.  Bitz declares the government's position that all of the Defendants were acting within the scope of their official employment as federal employees when carrying out the activities of which Lock complains. *Bitz Decl.*, ¶ 3.  *See also* 28 U.S.C. § 2679(d)(1).  The FTCA provides that its provisions are "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim … against such employee."  28 U.S.C. § 2679(b)(1).  Accordingly, the Court finds Lock's negligence claim exclusively cognizable under the FTCA.

The FTCA requires administrative exhaustion.  28 U.S.C. § 2675(a).  It states:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.

---

staff advised him to take either Tylenol or ibuprofen, and that, at times, he took Tylenol.  *Id.* Request for Administrative Remedy; *Lock's opposition,* Att. 20 (Doc. No. 60); *Complaint*, ¶ 32.

*Id.*

The FTCA's administrative exhaustion requirement is jurisdictional, and cannot be waived. *West v. U.S.*, 592 F.2d 487, 492 (8th Cir. 1979); *Bellecourt v. U.S.*, 994 F.2d 427, 430 (8th Cir. 1993). Presentment of an administrative claim under the FTCA "must be pleaded and proven by the FTCA claimant." *Bellecourt*, 994 F.2d at 430. (citations omitted). It must include a "sum certain" of the amount of damages sought. *See* 28 U.S.C. § 2675(b); *Farmers State Sav. Bank v. Farmers Home Admin.*, 866 F.2d 276, 277 (8th Cir. 1989); *Lunsford v. U.S.*, 570 F.2d 221, 225 (8th Cir. 1977); *Melo v. U.S.*, 505 F.2d 1026, 1029 (8th Cir. 1974). *See also Webb v. Pennington County Bd. of Commiss.*, 92 Fed. Appx. 364, 265 (8th Cir. 2003) (prisoner failed to properly exhaust under FTCA "because he did request a sum certain").

Lock filed an administrative request for an MRI and appropriate medication for his back pain, and appealed the denials of those requests through the prison Administrative Remedy Program. *See* 28 C.F.R. § 542.10. In these filings, he never raised a negligence claim or sought damages, much less stated a sum certain he sought from the government. The government declares that it never received an administrative claim for damages from Lock. *Bitz Decl.* at ¶ 6. Under these circumstances, Lock never presented a federal tort claim to the appropriate federal agency as required by the FTCA. *Lunsford*, 570 F.2d at 225; *Farmers*, 866 F.2d at 277. *See also Bellecourt v. U.S.*, 784 F. Supp. 623, 631 (D. Minn. 1992) (prisoner's internal grievance did not constitute actual presentment of FTCA administrative claim for damages); 28 C.F.R. § 542.10 (referring to separate administrative procedure for tort claims); 28 C.F.R. §§ 543.30 -.32 (administrative procedures for exhaustion of federal prisoner tort claims under FTCA).

As FTCA exhaustion did not occur, the Court lacks subject matter jurisdiction over Lock's FTCA claim. Accordingly, the Court recommends dismissal without prejudice of Lock's

federal tort claim under Fed. R. Civ. P. 12(b)(1). *See Faison v. LeBlanc*, 250 Fed. Appx. 195, 196 (8th Cir. 2007) (affirming dismissal of unexhausted FTCA claim without prejudice).

### C.    Lock's Motions

Also before the Court are three motions by Lock. Lock seeks the Court's leave to subpoena Dr. Dey regarding why he left the Bureau of Prisons' employ. *See* Doc. No. 47. Given Dr. Dey's detailed declaration regarding his treatment of Lock's back pain, the Court does not find such testimony relevant to this action or reasonably calculated to lead to the discovery of admissible evidence, and, therefore, denies the motion. *See* Fed. R. Civ. P. 26(b)(1).

Lock also filed a "Request for Assistance from the Court," in which he asks the Court to order the Defendants to provide him with better pain medication or transfer him to a federal medical hospital. *See* Doc. No. 66. The Court's above discussion of Lock's Eighth Amendment claim addresses both of Lock's requests. Lock's request for pain medication does not survive summary judgment under the Eighth Amendment. His request for a transfer has not been administratively exhausted under the PLRA. The Court, therefore, denies this motion as moot in light of its ruling on the Defendants' summary judgment motion.

Finally, Lock seeks relief from the Court's order regarding Lock's payment of the filing fee for this case. *See* Doc. Nos. 62 (Lock's motion requesting relief from filing fee), 10 (granting Lock IFP status and ordering payment of filing fee in installments). Lock states that he is no longer financially able to pay the filing fee installments the Court previously ordered.

The PLRA does not contemplate completely excusing prisoners from paying lawsuit filing fees. Rather, it allows financially qualifying prisoners to file suit without *prepaying* the full filing fee. 28 U.S.C. § 1915(a)(1). However, it still requires such prisoners to pay an initial partial filing fee and monthly installments. The installments are adjusted to the prisoner's

monthly income, and are not deducted unless the prisoner has more than $10 in his account. *Id.*, § 1915(b)(1).  The PLRA is clear that, "[I]f a prisoner brings a civil action or files an appeal in forma pauperis, *the prisoner shall be required to pay the full amount of a filing fee*."  *Id.* (emphasis supplied).

Accordingly, Lock's request to be excused from paying any further filing fee installments is denied.  The installments are calibrated to his monthly income and not assessed if it is too low.  Lock became responsible for the full filing fee once he filed his case, and his asserted change in financial status does not alter that commitment.  *Id.*

Moreover, the recommended dismissal of this case does not excuse Lock from paying the filing fee.  *In re Tyler*, 110 F.3d 528, 529-530 (8th Cir. 1997) ("Even if Tyler's petition is dismissed, Tyler will still be assessed the full filing fee because the PLRA makes prisoners responsible for their filing fees the moment a prisoner brings a civil action or files an appeal.") (citation omitted).

## IV.    CONCLUSION

Lock failed to raise a genuine issue of material fact regarding deliberate indifference on his Eighth Amendment MRI and pain medication claims, the only claims he administratively exhausted under the PLRA.  Lock's FTCA claim was not administratively exhausted, and the Court, therefore, lacks subject matter jurisdiction over it.

Lock's motions must be denied.  Lock has not sufficiently articulated a theory of discoverability for his proposed discovery of Dr. Dey.  Lock's motion seeking a transfer or a foot specialist's care is moot in light of the Court's recommendation regarding the Defendants' summary judgment motion.  The PLRA does not countenance the relief Lock seeks from payment of the filing fee for this action.

## V.      RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED THAT:**

A.      Defendants' motion to dismiss or for summary judgment (Doc. No. 32) be

**GRANTED** as follows:

1.      Lock's claim under the Federal Tort Claims Act be **DISMISSED**

**WITHOUT PREJUDICE**.

2.      Lock's Eighth Amendment claim regarding the denial of an MRI and

medication be **DISMISSED WITH PREJUDICE**.

3.      Lock's Eighth Amendment claim regarding denial of medical treatment

other than an MRI and medication be **DISMISSED WITHOUT**

**PREJUDICE**.

B.      Lock's motions for discovery from Dr. Dey (Doc. No. 47) and to show cause and

for injunctive relief (Doc. No. 62) be **DENIED**.

C.      Lock's motion for assistance from the Court (Doc. No. 66) be **DENIED AS**

**MOOT**.

D.      This action be **DISMISSED IN ITS ENTIRETY.**

Dated:  July 30, 2008                              _s/ Jeanne J. Graham_____
                                                   JEANNE J. GRAHAM
                                                   United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **August 13, 2008**.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The District Court shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.